## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHANKAR B. PATEL, | ) | |
| MANISH PATEL, | ) | |
| MICHAEL OLISH, | ) | |
| AL'S PLACE OF STREATOR, INC., | ) | |
| AMVR HOSPITALITY, INC., | ) | |
| TASTY FOOD, INC., and | ) | |
| ANTONIOS TOPALIDIS, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-0366-MJR-PMF |
| | ) | |
| TODD J. FENDLER, | ) | |
| PATTY STUDER, | ) | |
| NORTHERN ILLINOIS | ) | |
| INSURANCE AGENCY, | ) | |
| NORTHERN ILLINOIS INSURANCE, | ) | |
| NORTHERN UNDERWRITING | ) | |
| MANAGES, INC., | ) | |
| NORTHERN UNDERWRITING | ) | |
| MANAGERS, | ) | |
| NIL INS. AGENCY, | ) | |
| NUM INC., | ) | |
| BROOKE LEMMONS, | ) | |
| NIIB NORTHERN | ) | |
| BILLING SERVICES, | ) | |
| NORTHERN ILLINOIS | ) | |
| GROUP COMPANIES, INC., and | ) | |
| U.S. BANK, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

All of the plaintiffs in this case purportedly obtained insurance for their

businesses from a group of insurance companies that were formed by Todd Fendler.

The plaintiffs decided not to renew that insurance in 2014 and 2015, instead obtaining

coverage from other carriers.  Fendler and two of his employees, Patty Studer and Brooke Lemmons, evidently didn't take the rejection well:  they allegedly falsified automated bank debit forms, submitted those counterfeit forms to U.S. Bank, and then requested automatic withdrawals for insurance premium payments from 2014 and onward, to be taken out of the plaintiffs' bank accounts and deposited in the insuring entities' accounts at U.S. Bank.  The plaintiffs purportedly asked for their money back from Fendler and his companies but were rebuffed, so they filed suit in this Court, alleging that all involved—including U.S. Bank—violated the Racketeer Influenced and Corrupt Organizations Act.  The plaintiffs' initial complaint was dismissed and leave to file a first amended one was denied, as both the initial complaint and the first amended complaint didn't satisfy the respective requirements of Federal Rules of Civil Procedure 8 and 9.  The plaintiffs have since filed a second amended complaint to attempt to remedy those problems, and the insuring defendants and U.S. Bank have separately moved to dismiss, again arguing that the plaintiffs' complaint doesn't put forth viable racketeering claims.  Those motions to dismiss are now before the Court for review.

Both the insuring defendants and U.S. Bank offer a number of reasons justifying dismissal, all backed up by a developed brief.  It's tough to ascertain, consistent with the way the adversarial process is supposed to work, how well those arguments fare, as counsel for each of the plaintiffs hasn't addressed any of the discrete arguments put forth in the defendants' motions.  The insuring defendants maintain that the racketeering suit should be dismissed because the plaintiffs' pleading lumps all of the defendants together in a way that makes it difficult to discern who did what; because

the complaint doesn't clearly delineate who were the "persons" liable under 18 U.S.C. § 1962(c) as distinct from who or what qualified as the "enterprise" under that same provision of the racketeering statute; because each defendants' role in the enterprise isn't adequately pled; and because there was no pattern of racketeering activity alleged. U.S. Bank echoes many of those arguments.  The plaintiffs' response to both of the motions to dismiss is all of five paragraphs long, and it cites no law and offers no developed response to the defendants' points.  That kind of response is no response at all.  The Court previously warned plaintiffs' counsel that if he failed to respond to the defendants motions and the arguments made within them that Local Rule 7.1—and its statement that the failure to respond to a motion can admit the motion's merits—would apply.   He has yet again failed to heed that warning, so the Court will treat the plaintiffs' failure to respond to the arguments as an admission to dismissal.

Even if the Court forgave the plaintiffs' failure to file a developed response, the amended complaint would still be grist for dismissal.  The plaintiffs primarily seek relief under the part of the racketeering statute which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering." **18 U.S.C. § 1962(c).**  That section is a bit difficult to parse—it's no wonder it's called the "nightmare" of the federal judge, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* **20 F.3d 771, 785 (7th Cir. 1994)**—but the gist is that the statute allows for suits against persons who form an enterprise and use it to commit certain illegal acts, or who commandeer an

enterprise to the same end.  *See Emery v Am. Gen. Fin., Inc.*, **134 F.3d 1321, 1323-24 (7th Cir. 1998); *McCullough v. Suter*, 757 F.2d 142, 143-44 (7th Cir. 1985).**

The key word is "enterprise"—the racketeering statute doesn't extend to conspiracies between two parties alone, but only to parties who use or create an enterprise to perform illegal acts.  *Bachman v. Bear, Stears & Co., Inc.*, **178 F.3d 930, 931-32 (7th Cir. 1999).**  The enterprise can be informal—it can be a "union or group of individuals in fact although not a legal entity," **18 U.S.C. § 1961(4)**—but it must have some structure, evinced by a common purpose, some longevity, and relationships among those associated with it.  *Boyle v. United States*, **556 U.S. 938, 945-47 (2009).**  The plaintiffs seem to allege that the individual insurers, the insurance entities, and the bank were all persons who formed a loose enterprise consisting of all of them, but the amended complaint continues to say little about the hallmarks of that enterprise.  The current iteration says a bit more than the last about the structure of an enterprise that would consist of the insuring individuals and entities, but the plaintiffs have chosen to define the enterprise as something larger than that—as consisting of those parties *and* U.S. Bank—so they must lay out the structure, purpose, and relationships of that whole group.  They still haven't done that with any level of clarity in their amended complaint, especially as it concerns the entire group's purpose and the relationships that existed between the group's members.  That remains a particularly thorny omission given that the alleged enterprise here consists of insurers and a multi-billion dollar bank; it's not at all evident how a bank like that would join a group of insurers to do anything, much less to falsify debits that add up to a miniscule percentage of the bank's

assets.  All racketeering complaints need to have some detail pled about the enterprise to push the existence of the enterprise from a possibility to a probability.  *E.g., Rao v. BP Prods. N. Am., Inc.,* **589 F.3d 389, 399-400 (7th Cir. 2009);** *Stachon v. United Consumers Club, Inc.,* **229 F.3d 673, 676 (7th Cir. 2000).**  The contours of the entire enterprise here remain vague, and without more, the enterprise looks to be implausible.

There's another problem with the enterprise-related allegations, especially as it concerns U.S. Bank and a few of the insuring defendants.  Each person or entity targeted for liability for a violation of 18 U.S.C. § 1962(c) must have "participated in the operation or management" of the enterprise, such that it played a role "in directing the enterprise's affairs" and not just its own operations.  *Reves v. Ernst & Young,* **507 U.S. 170, 185 (1993).**  Aside from conclusory allegations, the amended complaint is routinely vague about what some of the named parties did to participate in the enterprise.  The complaint says little about what many of the insurance entities did to direct the entire enterprise's affairs; it mentions one of the insuring defendants, Brooke Lemmons, only once; and the only developed allegations against U.S. Bank accuse it of offering bank accounts to the insuring entities, processing debit transactions, and allegedly rejecting disputes as to certain transactions.  Those are U.S. Bank's affairs conducted as a part of its routine services to customers, and they don't evince participation in the kind of separate enterprise that would trigger racketeering liability.  *E.g., McNew v. People's Bank of Ewing,* **999 F.2d 540 (6th Cir. 1993);** *Crissen v. Gupta,* **994 F. Supp. 2d 937, 947 (S.D. Ind. 2014);** *Rosner v. Bank of China,* **528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007);** *Jubelirer v. MasterCard Int'l,* **68 F. Supp. 2d 1049, 1052-53 (W.D. Wis. 1999).**

These pleading flaws render the § 1962(c) claim bunk, and because there is no viable racketeering claim put forth in the amended complaint, the conspiracy claim that is predicated on the same facts is also subject to dismissal. *See Stachon*, **229 F.3d at 677.** The question remains whether all or part of the case should be dismissed with prejudice or if the plaintiffs should be allowed to file another amended complaint. The Court is of the view that U.S. Bank should be dismissed from the case with prejudice. The last dismissal order stressed the problems with the complaint as to U.S. Bank, and the plaintiffs have yet again been unable to fix them. The complaint still doesn't lay out how U.S. Bank directed the affairs of the enterprise that consisted of it and the insuring parties; it offers next to nothing about how that unwieldy enterprise was structured and what relationships U.S. Bank had with the other members of the enterprise; the few details as to the structure of the entire enterprise make such an enterprise look implausible; and there's nothing developed in the complaint concerning any agreement between U.S. Bank and the other defendants so as to allow for liability against the bank under the conspiracy provision of the racketeering statute. At the end of the day, the plaintiffs have had three[1] chances to put forth viable racketeering claims against U.S. Bank, and given that the last dismissal order highlighted all of the problems laid out above, additional chances to bring a complaint as to the bank would be futile.

While there's no point in giving the plaintiffs another chance to plead racketeering claims against U.S. Bank, discretion just barely counsels in favor of giving

---

[1] The plaintiffs filed an initial complaint; they submitted a first amended complaint that they claimed fixed all of the problems raised in the original motions to dismiss; and they filed a second amended complaint after the Court entered its first dismissal order.

the plaintiffs one final shot at asserting a racketeering claim against one or more of the insuring defendants or insurance entities.  There are allegations in the complaint that, when accepted as true, could suggest a viable racketeering claim against them.  The complaint alleges, in broad strokes, that Fendler formed a number of insurance entities and used those companies as fronts to press fraudulent insurance transactions.  Publicly-available documents referenced in the complaint back up those allegations, as do recent news stories concerning some of Fendler's problems with state insurance authorities.  *See* **Stephanie Jones,** *Despite Having License Revoked by Two States, Northern Illinois Agency Continues to Operate*, INSURANCE JOURNAL **(July 20, 2016)**.  Whether those allegations are true is beside the point—what matters is whether the allegations could constitute a racketeering claim, and depending on how the plaintiffs lay out their next amended complaint, they *might* clear that hurdle.  The plaintiffs are reminded that, in putting together a third complaint, they should be mindful of the requirements for all racketeering claims.  If the plaintiffs again plead their case in a way that doesn't comply with the federal rules or is inconsistent with racketeering law, the amended complaint will be dismissed with prejudice and the case will be closed.

One closing note is in order concerning a request made by the plaintiffs after they filed their second amended complaint.  All of the plaintiffs ask the Court to impose a constructive trust on the defendants "to preserve those $183,796.92 in traceable assets as the *res* available to pay Plaintiffs' damages in this case."  The motion cites no law in support, and as the defendants rightly point out, the relief that the plaintiffs really seem to be after is a request for prejudgment attachment, for there's no real identifiable or

traceable *res* referenced in the plaintiffs' motion.  Either of those flaws would justify denying the motion, but the real problem with the motion is that it is moot in light of the Court's decision to grant the defendants' motions to dismiss.

To sum up, U.S. Bank's motion to dismiss (Doc. 53) is **GRANTED** in the entirety—U.S. Bank is **DISMISSED with prejudice** from this action.  The insuring defendants' motion to dismiss (Doc. 55) is **GRANTED IN PART AND DENIED IN PART**—the second amended complaint is dismissed, but the dismissal as to the insuring defendants is without prejudice**.**  The plaintiffs will have until November 23, 2016 to file a third amended complaint against one or all of the existing insuring defendants.  The motion for imposition of a constructive trust (Doc. 46) is **DENIED** as **MOOT** given that there is no viable complaint currently before the Court.

**IT IS SO ORDERED.**

**DATED:  October 26, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**